**EVERETT CASH MUTUAL INSURANCE COMPANY,** Petitioner

v.

**INSURANCE DEPARTMENT,** Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 29, 2007.

Decided Jan. 23, 2008.

Carl Anthony Maio and Stephanie B. Fineman, Warrington, for petitioner.

W. Christopher C. Doane, Harrisburg, for respondent.

Jason F. Ernest, Mechanicsburg, for amicus curiae, Insurance Agents & Brokers of Pennsylvania.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Everett Cash Mutual Insurance Company petitions for review of the decision of the Insurance Commissioner (by her designee), concluding that Insurance Company failed to comply with Section 3 of Act 143 (Act),[1] 40 P.S. § 243 (hereafter re-

---

1. Act of September 22, 1978, P.L. 763, *as amended.* The Act governs the termination of agency contracts.

ferred to as Section 243), after it terminated its agency contract with C. Kenneth Grant Inc. Resolution of this appeal requires the court to construe Section 243(a), a matter of first impression.

It is undisputed that C. Kenneth Grant Inc. (Agency) has been an authorized agency of Everett Cash Mutual Insurance Company (Insurance Company), a property and casualty insurer, since 1994. In 2004, Insurance Company placed Agency on rehabilitation. When Agency failed to meet its goals, Insurance Company terminated the contract by letter dated October 3, 2005; the termination was effective January 1, 2006. Shortly thereafter, Insurance Company began sending nonrenewal notices to Agency's policyholders, which stated, among other things, that the subject policy would not be renewed on the anniversary date, that Agency no longer represented Insurance Company, and that if other arrangements had not been made, the policyholder could contact Insurance Company to renew coverage through its in-house agency.

Pursuant to Agency's request, the Insurance Department (Department) reviewed the termination and determined that the termination complied with the Act, which governs termination of agency contracts. For reasons not clear from the record, the matter was then referred to the Department's Administrative Hearings Office for further review.[2] As a result, the Department directed Insurance Company to reinstate any insurance policy on which a notice of cancellation or refusal to renew had been issued; Insurance Company reinstated the policies as directed. The matter then proceeded upon the parties' joint stipulation of facts, briefs and oral argument.

The parties' stipulation limited the issue to construction of Section 243(a).

■ Section 243(a) provides, in pertinent part:

> Where an insurer notifies an agent that its contract shall be terminated, the insurer *shall offer to continue such agent's policies and any amendments thereto, through such agent* for a period of 12 months from the effective date of termination, subject to the insurer's current underwriting standards.[Emphasis added]

In construing Section 243(a), the Commissioner took administrative notice that, in the insurance industry, "to continue" is synonymous with "to renew". The Commissioner then reasoned:

> Section 243(a) thus directs a company to offer renewal for all its policies for 12 months from a contract termination effective date. The offer must be made through the agency whose contract has been terminated. Nowhere does this section require an entire book of business to be closed within those 12 months. This section simply places a limit on how long policies need to be renewed by a company through the agency whose contract has ended.

> Presumably the legislature knew the difference between the offering to continue a policy and issuing nonrenewal notices. Presumably too it knew that insurance policies are renewed in one year increments and that insurers may not interfere with an insurance policy during that one year policy period except under certain underwriting situations. Nevertheless, it directed a company to "offer to continue such agent's polices." The effect of this interpreta-

---

**2.** According to the Department's appellate brief, Agency contacted the Department, contending that Insurance Company was not providing the twelve month continuation period required by Section 243; the matter was then referred to the Administrative Hearings Office for resolution. *See* Commissioner's appellate brief at 4 n. 2.

tion is that the last policy for which a company must offer renewal is the one with an effective date 12 months from the contract termination date.

Commissioner's decision at 7–8 (footnote omitted). Based upon this reasoning, the Commissioner concluded that Insurance Company was required to renew policies during the twelve-month period following the contract termination and, therefore, its failure to renew policies following Agency's termination violated Section 243(a). The Commissioner then held that the effective date of the termination was January 30, 2007, the date of her decision, and required Insurance Company to "offer to renew for one year, each and every remaining active policy through [Agency]" until January 30, 2008. *Id.* at 11. The present appeal followed.

On appeal, Insurance Company contends that the Commissioner erred in construing Section 243(a). According to Insurance Company, Section 243(a) permits "an insurer [ ] to cancel· or non-renew a terminated agent's policyholders from the effective date of termination through twelve months *from* the effective date of termination.... The cancellation or non-renewal of a terminated agent's policies is therefore staggered on a monthly rolling basis throughout the twelve months following

the effective date of termination until all the terminated agent's policies are canceled or non-renewed."[3] Petitioner's appellate brief at 12–13 (emphasis in original). Pursuant to Insurance Company's construction, if a policy is subject to renewal on the date of termination, it may properly send out a notice of cancellation or non-renewal sixty days prior thereto, even though the agency contract had not yet terminated.[4]

Insurance Company also contends that it has complied with the statutory directive that it shall continue policies after termination of the agency contract because it did not cancel policies midterm on the termination date but continued them thereafter, and it offered to continue policies through its in-house agency. Finally, Insurance Company contends that the Commissioner erred in setting a new termination date of January 1, 2007, because the parties stipulated, and the Department found, that the contract terminated on January 1, 2006. Insurance Company demands disgorgement of all commissions Agency received after January 1, 2007.

In response, the Department contends, *inter alia,* that the Commissioner's construction of Section 243(a) comports with

---

**3.** Insurance Company maintains that application of its view prevents an immediate wholesale cancellation of policies, thereby allowing policies to continue during the twelve-month period following the date of termination.

**4.** Rather than focusing on the phrase "shall offer to continue such agent's policies ... through such agent," Insurance Company makes a tortured argument regarding the distinction between the phrases *"from* the effective date of termination" (used in Section 243) and *"after* notice of termination," which is used in a similar provision applicable to automobile insurance policies. *See* Section 2003(c) of the Act of May 17, 1921, P.L. 682, added by the Act of June 17, 1998, P.L. 464, 40 P.S. § 991.2003(c). That section provides:

For a period twelve (12) months after notice of termination given to an agent:

(1) An insurer may not cancel or refuse to renew existing policies written through the terminated agent because of such termination except [in those circumstances where the insurer could cancel or refuse to renew such policies had the agency relationship continued.]

. . . .

(3) An insurer shall be obligated to pay commissions for such policies that are continued or renewed through the terminated agent except [for circumstances not applicable here].

the plain language of the provision and effectuates the purposes of the statute.

Prior to addressing the arguments on appeal, we note that the Act, which governs the termination of agency contracts that have been in effect for at least four years, provides certain procedural protections to covered agencies. As this court noted in *Robert E. Faust Agency, Inc. v. Pennsylvania Insurance Department*, 734 A.2d 932, 933 n. 2 (Pa.Cmwlth.1999):

> [The Act] requires [90]-days prior notice of the termination by the insurer; requires that terminations due to adverse experience be based on at least two successive years of adverse experience prior to the notice of termination; restricts termination based upon adverse experience, mix of business and lack of premium volume by imposing on the insurer an obligation to make a reasonable attempt to rehabilitate the agent prior to termination. [The Act] further provides for the continuation of business and payment of commissions following the contract termination.

■■■ Turning to the merits of the parties' arguments, we initially note that there is neither judicial nor administrative authority interpreting Section 243(a).[5] However, it is well-settled that while the interpretation of a statute is a question of law over which this court has plenary review, the court generally accords deference to the statutory interpretation given by the agency charged with administration of the statute unless that interpretation is clearly erroneous or violates legislative intent.

*Martin Media v. Dep't of Transp.*, 700 A.2d 563 (Pa.Cmwlth.1997). Where the court is asked to construe an unambiguous statutory provision, however, the administrative interpretation requires little deference. *Office of Adm. v. Pa. Labor Rels. Bd.*, 591 Pa. 176, 916 A.2d 541 (2007).

Here, we conclude that the provision at issue is unambiguous, clearly requiring an affirmative offer to renew or continue polices through the terminated agent for twelve months after termination of the agency contract. For example, assuming that the effective date of agency termination is January 1, 2007, and a customer's policy is set to renew on March 1, 2007, the insurer must offer to renew that policy for another year (therefore, through February 2008) through the terminated agent. The Commissioner's interpretation is consistent with this unambiguous language. *A fortiori*, Insurance Company's construction renders the statutory provision completely meaningless, allowing the insurer to cancel or non-renew each policy that matures after the termination date without affirmatively offering to continue any policy. Merely refraining from canceling a policy midterm on the agency termination date, thereby permitting the policy to run full term, does not satisfy the statute because it does not constitute an "*offer* to continue." Moreover, canceling a policy midterm absent permitted reasons is generally prohibited. *See generally* Section 2 of the Act of July 3, 1986, P.L. 396,[6] *as amended*, 40 P.S. § 3402 (canceling a policy of insurance covering commer-

---

**5.** The various administrative opinions cited by the parties are not on point; rather, they address whether the termination of an agency contract comported with Act 143. At the end of each opinion, the Commissioner summarily refers to Section 243 in directing implementation of the decision. For instance, in *US Casualty Corp./Travelers Property and Casualty*, AT00–04–038 (mailed September 14, 2000), the decision states: "The Agency

Agreement ... terminates as of the date of this decision. Pursuant to and in accordance with 40 P.S. § 243, [the insurance company] shall continue the agency's policies and amendments thereto through the agency for a period of twelve months."

**6.** Entitled, "An Act requiring notice of rate increases, policy cancellations and nonrenewals by property and casualty insurers."

cial property and casualty risks midterm is prohibited for any reason other than those specified); Sections 2003 and 2004 of the Act of May 17, 1921, P.L. 682, added by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2003, 991.2004 (detailing permissible reasons an automobile insurer may cancel a policy).

The Department also contends that its construction effectuates the intended purposes of Section 243, that is, protecting consumers by avoiding a potential disruption in their coverage, and, protecting agencies by affording them sufficient time to transition customers to another insurer, thereby helping to preserve the agency's "book of business" (customer base). *Amicus curiae,* Insurance Agents and Brokers of Pennsylvania, echoes this position as well.

While resort to legislative intent is unnecessary since the statute is unambiguous,[7] we agree that the Commissioner's construction serves the obvious purpose of Act 143, including affording safeguards to agencies pre- and post-termination. Section 243(a)'s mandatory twelve-month continuation period provides agencies with a post-termination grace period to meet their policy holders' needs and protect their client base.

Based upon the foregoing, we conclude that the Commissioner properly construed Section 243(a) in concluding that Insurance Company was required to affirmatively offer to renew policies through the terminated agent for one year after the agency termination.

■ We also conclude that the Commissioner did not abuse her discretion in changing the effective date of the agency termination. Apparently, it is a standard practice in the Department to extend the termination date until the date of her decision on review of the termination, and this court so ordered in *Flinchbaugh v. Maleski,* 159 Pa.Cmwlth. 289, 632 A.2d 1357, 1360 n. 4 (1993). Having ordered reinstated coverage pending review, it was not inappropriate to have set the date of decision as the date upon which non-renewals could begin, assuring an orderly transition of coverage on each policy's anniversary date. It is true that because the validity of the underlying termination was not challenged, but only the period during which policy cancellations could occur, the Commissioner might have fashioned some interim form of relief pending review that would have allowed non-renewals to begin January 1, 2007, rather than one year past her eventual decision. Since this was the most to which Agency was entitled, it might have obviated what Insurance Company aptly characterizes as a windfall to Agency that it received an additional year before policies could begin to be cancelled in late January of 2008. Nonetheless, we are not prepared to say that the Commissioner was required to do so.

Based upon the foregoing, the Commissioner's decision is affirmed.

### ORDER

AND NOW, this 23rd day of January, 2008, the Insurance Commissioner's decision in the above-captioned matter is hereby AFFIRMED.

---

7. *Pa. Power Co. v. Pub. Util. Comm'n,* 932 A.2d 300 (Pa.Cmwlth.2007).